## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| SONOSCAPE AMERICA, INC. | : | |
| Plaintiff, | : | |
| v. | : | Court No. 26-03037 |
| UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner for the U.S. CUSTOMS & BORDER PROTECTION, | : | |
| Defendants. | : | |

## <u>COMPLAINT</u>

Plaintiff SonoScape America, Inc. ("**Sonoscape America**"), by and through its attorneys, allege and state as follows:

1.      Plaintiff is a U.S. importer of record who imported the merchandise and has paid the tariffs challenged in this action.

2.      This action challenges certain *ad valorem* tariffs on goods from any country, on any schedule, in any amount, and for any policy reason that the President imposed through a series of Executive Orders that invoked the authority to do so pursuant to the International Emergency Economic Powers Act ("**IEEPA**"). (50 U.S.C. § 1701 *et seq.*) and the National Emergencies Act (50 U.S.C. § 1601 *et seq.*).

3.      On February 20, 2026, the United States Supreme Court ruled that IEEPA does not grant the President with such tariff-levying authority. *Learning Resources, Inc. v. Trump,* No. 24-1287, (S. Ct. Feb. 20, 2026).  The Supreme Court thus affirmed the decision of this Court and

1

the U.S. Court of Appeals for the Federal Circuit ("**Federal Circuit**").  *See V.O.S. Selections,*

*Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025), *aff'd sub nom*, *V.O.S.*

*Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

4.      The Supreme Court also confirmed that challenges to the IEEPA tariffs fall

"within the exclusive jurisdiction of" the Court of International Trade.  *See Learning Resources,*

*Inc. v. Trump,* slip op. 24-1287 at 5.  This Court thus has jurisdiction and authority to order

remedial relief and refunds of unlawfully collected IEEPA duties paid by importers.

5.      Plaintiff brings this action asking the Court to rule, consistent with *Learning*

*Resources*, that the IEEPA duties are not lawful and that Defendants must provide a full refund of

the IEEPA duties that Plaintiff has paid, with interest.

6.      This separate action is necessary because although the Supreme Court has held

that the IEEPA duties and the underlying Executive Orders are unlawful, importers that have

paid IEEPA duties, including Plaintiff, are not guaranteed a refund for those unlawfully collected

tariffs in the absence of their own judgment and judicial relief.

7.      Entries on which Plaintiff has paid IEEPA tariffs have liquidated or will shortly

begin to be liquidated with final assessments of these IEEPA tariffs. For unliquidated entries or

entries for which liquidation has not yet become final, Plaintiff seeks relief from the impending

final liquidations to ensure that its right to a complete refund of the tariffs paid is not

jeopardized. For any liquidated entries, Plaintiff seeks an order from this Court directing U.S.

Customs and Border Protection ("**CBP**") to reliquidate and issue refunds to Plaintiff of any

IEEPA tariffs paid.

8.    Accordingly, Plaintiff seeks (i) a final determination that the IEEPA duties are unlawful; and (ii) a final judgment awarding to Plaintiff a full refund of all IEEPA duties, plus interest, which have been paid by Plaintiff, whether the entries are liquidated or unliquidated.

## JURISDICTION

9.    The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i), and under the Administrative Procedure Act ("**APA**"), 5 U.S.C. §§ 702, 704 706.  28 U.S.C. § 1581 provides this Court with "exclusive jurisdiction" over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

10.    Plaintiff Sonoscape America is a U.S. importer of record who has paid IEEPA duties on a number of entries of imported merchandise.

11.    Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12.    Defendant U.S. Customs & Border Protection ("**CBP**") is the agency that collects duties or tariffs and taxes on goods imported into the United States. CBP collected payments of IEEPA duties made by Plaintiff.

13.    Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

## STANDING

14.     Plaintiff, Sonoscape America, has standing to bring this lawsuit because it is an importer of record that has paid IEEPA duties on goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by CBP.  By paying what it believes to be unlawful IEEPA duties, Plaintiff has suffered injury.  See, *V.O.S. Selections Inc.*, 772 F. Supp. 3d at 1369 (*citing Totes-Isotoner v. United States*, 594 F.3d 1346, 1351 (Fed. Cir. 2010)).  The injury is ongoing as CBP is still continuing to liquidate entries with the assessment of IEEPA duties. A determination that the IEEPA duties assessed against Plaintiff are unlawful and unconstitutional, and a judgment awarding refunds of those IEEPA duties, plus interest, would redress this injury.

## TIMELINESS OF THE ACTION

15.     An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues.  28 U.S.C. § 2636(i)

16.     Plaintiff contests actions taken by Defendants that resulted in Plaintiff paying IEEPA duties on its entries of imported goods.  The claims asserted by Plaintiff accrued at the earliest on February 4, 2025, the effective date of the President's Executive Order 14195, imposing the initial 10% *ad valorem* IEEPA tariff on goods from China.  See, Executive Order 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025).

17.     Plaintiff has commenced this action by filing a summons and complaint within two years of the date that Plaintiff paid any IEEPA tariffs, which is when its claims started to accrue. Thus, Plaintiff's action is timely filed pursuant to 28 U.S.C. § 2636(i) and USCIT Rules 3(a)(3).

## STATEMENT OF FACTS

4

18.    On February 1, 2025, President Trump issued three executive orders that declared a national emergency related to the trafficking of opioids into the United States and the failure of Canada, Mexico, and China to meaningfully address this purported national emergency.  Each executive order was premised on IEEPA authorizing the tariffs. President Trump then imposed a 25 percent *ad valorem* tariff on imports from Canada and Mexico, and imposed a 10 percent *ad valorem* tariff on imports China.  *See,*  Executive Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025); Executive Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025); Executive Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025).  These IEEPA tariffs are collectively referred to as the "Trafficking Tariffs."

19.    Following negotiations with the three countries subject to the Trafficking Tariffs, and taking into account each of the three countries' responsive actions, President Trump issued a series of Executive Orders modifying the Trafficking Tariffs.  *See, V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1362-63 (Ct. Int'l Trade 2025) (summarizing the subsequent Executive Orders modifying the Trafficking Tariffs).

20.    On April 2, 2025, President Trump issued an executive order that declared a national emergency over the "[l]arge and persistent annual U.S. goods trade deficits" with all of its trading partners, resulting in "a lack of reciprocity in our bilateral trade relationships, disparate tariff rates and non-tariff barriers, and U.S. trading partners' economic policies that suppress domestic wages and consumption." Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits,*  90 Fed. Reg. 15041 (April 7, 2025). The President therefore imposed a 10 percent *ad valorem* baseline tariff on nearly all imports to the United States,

effective April 5, 2025 and set a timeline for additional "reciprocal" tariffs to be imposed on 57 countries, effective April 9.  *Id*. at Annex I.  These higher country-specific tariffs ranged from 11% to 50%.  *Id*. Such IEEPA tariffs are referred to as the "**Reciprocal Tariffs.**"

21.    Following negotiations with various countries subject to the Reciprocal Tariffs, and taking into account each of the countries' responsive actions, President Trump issued a series of Executive Orders modifying the Reciprocal Tariffs.  *See, V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1363-64 (Ct. Int'l Trade 2025) (summarizing the subsequent Executive Orders modifying the Reciprocal Tariffs).

22.    In implementing these two groups of Executive Orders imposing the Trafficking Tariffs and Reciprocal Tariffs (collectively referred to as "**IEEPA tariffs**" or "**IEEPA duties**"), the President directed changes to the Harmonized Tariff Schedule of the United States ("**HTSUS**"), requiring that goods subject to the challenged tariffs to be entered under new tariff codes under Chapter 99 of the HTSUS, titled "Temporary legislations; temporary modifications proclaimed pursuant to section 22 of the Agricultural Adjustment Act, as amended".  As a result, Plaintiff has had to modify its entry summary filings with the additional HTSUS subheadings and pay the associated IEEPA duties at the time of entry.

23.    On April 14, 2025, several companies filed an action in this Court challenging the legality of these IEEPA duties. *See V.O.S. Selections*, *et al. v. Donald J. Trump*, *et al.*, No. 25-cv-00066 (Dkt. 2).  On April 23, 2025, a number of states filed a similar action.  *See V.O.S. Selections*, *et al. v. Donald J. Trump*, *et al.*, No. 25-cv-00077 (Dkt. 2).  As discussed below, this Court held the orders were unlawful and the Supreme Court on February 20, 2026 affirmed.

24.    As the U.S. importer of record of merchandise that is subject to the unlawful IEEPA duties, Plaintiff has paid both the Trafficking Tariffs and Reciprocal Tariffs.

## STATEMENT OF CLAIMS

## COUNT ONE

## (IEEPA TARIFFS ARE UNLAWFUL BECAUSE THEY WERE IMPOSED IN EXCESS OF STATUTORY AUTHORITY)

25.     Paragraphs 1 through 24 are incorporated by reference.

26.     The Executive Orders imposing the Trafficking Tariffs and the Reciprocal Tariffs all cite to IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as authority to impose the IEEPA duties.  None of these statutes authorizes the President to impose tariffs.

27.     For imports, IEEPA authorizes the President to "by means of instructions, licenses, or otherwise … investigate, regulate, or prohibit … any transactions in foreign exchange" and to regulate … any … importation [] of any property in which any foreign country or a national thereof has any interest by any person."  50 U.S.C. § 1702(a)(1)(A), (B).

28.     Neither the plain language of IEEPA nor its legislative history supports the proposition that this statute provides the President with authority to impose tariffs.

29.     This Court in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), held that the President exceeded his authority under IEEPA when he imposed tariffs on imported goods.

30.     The Federal Circuit affirmed this Court's decision, holding that Congress did not clearly delegate to the President the authority to impose the challenged IEEPA duties.  149 F.4th at 1337.

7

31.     The Supreme Court affirmed those decisions holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.

32.     Plaintiff's present action challenges the same IEEPA duties based on the same facts and law as those struck down by the Federal Circuit in *V.O.S. Selections* and by the Supreme Court in *Learning Resources*. For the reasons set forth by this Court in *V.O.S. Selections*, as affirmed by the Federal Circuit and the Supreme Court, the IEEPA duties exceed the President's statutory authority, are unlawful, and are without effect as applied to Plaintiff.

33.     Plaintiff respectfully requests that this Court follow the binding precedent of the Supreme Court and Federal Circuit, declare the IEEPA duties unlawful as to Plaintiff, enjoin CBP from enforcing them as to Plaintiff, and order CBP to refund all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT TWO

## (IEEPA IS AN UNCONSTITUTIONAL DELEGATION OF CONGRESSIONAL POWER)

34.     Paragraphs 1 through 33 are incorporated by reference.

35.     In the alternative, if the Court were to construe IEEPA as authorizing tariffs, the IEEPA duties must nevertheless be held unlawful because IEEPA in that event would constitute an impermissible delegation of legislative power from Congress to the President.

36.     Article I of the U.S. Constitution provides that "[a]ll legislative powers herein granted" are "vested in" Congress, not the President.  U.S. CONST. art. I, § 1.  The Constitution further provides that Congress exclusively "shall have Power to lay and collect Taxes, Duties, Imposts and Excises" and to "regulate Commerce with Foreign Nations[.]" U.S. CONST. art. I, § 8, cls. 1, 3.  Tariffs fall within the Taxing and Commerce Clauses of the Constitution.

37.     To the extent that it is ever permissible under the Constitution for Congress to delegate any part of the powers vested in it by the Constitution to the President, Congress must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority.  *See, FCC v. Consumers' Rsch.*, 145 S. Ct. 2482, 2498 (2025).  In IEEPA, Congress did no such thing.

38.     Moreover, "[c]ourts expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance."  *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)).  When Congress has not clearly spoken, courts are directed to find that matters of "vast economic and political significance" are beyond the power of the President.  *Biden v. Nebraska,* 600 U.S. 477, 505-506 (2023).  By any measure, the IEEPA duties are of "vast economic and political significance."

39.     The Executive Orders invoking IEEPA as the authority for the imposition of the IEPPA duties do not pass Constitutional muster under either the non-delegation doctrine or the major questions doctrine.

40.     Plaintiff therefore requests that this Court declare the President's IEEPA tariffs to be unconstitutional and/or unlawful under the major questions doctrine.  The Court should thus enjoin Defendants from enforcing the tariffs them as to Plaintiff, and order CBP to refund all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT THREE

## DECLARATORY RELIEF, 28 U.S.C. § 2201

41.     Paragraphs 1 through 40 are incorporated by reference.

42.     Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

43.     Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

44.     Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties on goods it has imported into the United States.

45.     Accordingly, this Court is bound by the Supreme Court's holding in *Learning Resources* affirming the Federal Circuit's holding in *V.O.S. Selections* that the IEEPA duties are unlawful, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff.  772 F. Supp. 3d. at 1383-84, *aff'd*, 149 F.4th 1340.

* * *

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully request that this Court enter judgment in its favor:

(1)    declaring that the President lacks authority under IEEPA to impose tariffs;

(2)    declaring that the IEEPA tariffs are unlawful and void *ab initio* with respect to Plaintiff;

(3)    declaring that CBP lacks authority to implement and collect any IEEPA tariffs;

(4)    enjoining the Defendants from imposing and enforcing any IEEPA tariffs with respect to Plaintiff;

(5)    ordering the Defendants to refund, with interest, all the IEEPA duties paid by Plaintiff on its entries, whether liquidated or unliquidated;

(6)    awarding Plaintiffs their reasonable costs, including attorney fees, in bringing this action; and

(7)    granting such other relief as this Court deems just and proper.


Respectfully submitted,

 /s/ Adams C. Lee
 Adams C. Lee


Dated:  June 3, 2026                    HARRIS SLIWOSKI LLP
                                        600 Stewart Street, Suite
                                        1200 Seattle, WA 98101

                                        *Counsel to SonoScape America, Inc.*


11

## CERTIFICATE OF SERVICE

Court No. 26-03037

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on

June 3, 2026, copies of Plaintiffs' Summons and Complaint were served on the following parties

by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530


Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229


/s/ Adams C. Lee

Adams C. Lee